## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

**PATRICIA BRITO,** on behalf of Herself
and all others similarly situated,

              Plaintiff,

v.

**MAJOR ENERGY ELECTRIC
SERVICES, LLC,**

              Defendant.

_____/

Civil Action No.     1:20-cv-00230-ELH

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

### AMENDED CLASS ACTION COMPLAINT

All allegations made in this Amended Class Action Complaint are based upon

information and belief except those allegations that pertain to Plaintiff, which are based on

personal knowledge. Each allegation in this Amended Class Action Complaint either has

evidentiary support or, alternatively, pursuant to Rule 11(b)(3) of the *Federal Rules of Civil

Procedure*, is likely to have evidentiary support after a reasonable opportunity for further

investigation or discovery. Plaintiff, individually and on behalf of all others similarly situated,

for its Complaint against Defendants states as follows:

### INTRODUCTION

1.     This Amended Class Action Complaint seeks to protect consumers and recover

actual damages from Major Energy's uniform and repeated deceptive sales practices.  First,

Major Energy obtains many of its customers without even gaining their actual agreement or

authorization to switch to its electrical services, a practice known as "slamming."  Second, it

falsely promises lower electric bills compared to what consumers currently pay their electric provider but then places much higher charges on the bill, a practice known as "cramming."

2.     In deregulated markets where energy generation is separated from energy delivery such as Maryland, Incumbent utilities still deliver electricity, regardless of where customers buy that energy, and remain the default supplier for those who do not switch.  The consumer bills are still generated by the local utility and a supplier's charges appear as a single line item on the bill. Thus, the actual appearance of the bill received by the customer is largely the same as it was prior to being switched and it is not readily apparent that the service had been switched in the first instance, regardless of whether the consumer even consented to switch. Major Energy has the legal obligation to obtain your consent before it switches your service and it is obligated to inform customers of the charges for its services before they are applied to your monthly bill.

3.     Major Energy sells electric to consumers in New York, Pennsylvania, Maryland, New Jersey, Illinois, Massachusetts, Connecticut, Ohio and Washington DC through a network of both Major Energy's internal employees and external third-party vendors (collectively referred to as "sales representatives"). Each of these states have rules and regulations promulgated by their respective public service commissions which prohibit fraud, deceptive practices, slamming and otherwise failing to comply with the state's regulations in connection with the sale of electricity.

4.     Major Energy's sales representatives, who are paid on a commission basis, use standardized marketing and training materials to carry out door-to-door and telephone solicitations, in-person solicitations at retail establishments, and direct mail and online advertisements in an effort to switch consumers to Major Energy.

2

5.      Major Energy's sales representatives always ask consumers to see their utility bills, often under false pretenses, and copy down the information.  Frequently, the sales representatives simply switched many customer's without consent. Major Energy created a system that incentives document forgery and creates practical barriers for consumers to know that they have been slammed and even where a consumer realizes they have been slammed, the company includes an arbitration clause and class action ban in the forged door-to-door agreement which results in practical barriers for the consumer in finding representation.  Even in the cases where the sales representatives actually do convince the consumer to sign the door-to-door sales agreement, those Major Energy made unauthorized charges to consumers. Major Energy uniformly represented to potential customers that its electric rates will be lower than a customer's current provider. However, after Major Energy has switched a consumer over to Major Energy's electric services, it unilaterally and without justification, raises the electric rates charged and Major Energy's customers' electric bills increase unjustifiably to levels above what customers were paying to their prior electric provider.

**PARTIES**

6.      Patricia Brito is an adult individual person of the State of Maryland, residing in Baltimore County, Maryland. At all pertinent times hereto, she was a "consumer" as defined by Md. Code Ann., Com. Law § 13-101(c)(1).

7.      Major Energy Electric Services, LLC is a New York corporation regularly conducting business as an electricity provider in Maryland.  The company is a "merchant" as defined by MD. CODE ANN., COM. LAW § 13-101(g)(1).

8.      For purposes of this Class Action Complaint, any references to the acts and practices of Major Energy shall mean such acts and practices are by and through the acts of

Major Energy's officers, owners, members, directors, employees, representatives and/or other agents.

## JURISDICTION AND VENUE

9.      This is a nationwide class action commenced by Plaintiff on behalf of herself and all others similarly situated members of the Class and Sub-Classes defined below. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. 1332(d)(2), because Plaintiff and the vast majority of the members of the Class and Sub-Class are of diverse citizenship from Major Energy and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs. Upon information and belief, there are more than 1,000 members of the Class and Sub-Classes. This Court also possesses subject matter jurisdiction for Plaintiff's state law claims under 28 U.S.C. §1367.

10.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District and Defendant is subject to personal jurisdiction in this District.

11.      This Court has personal jurisdiction over Defendant Major Energy because Defendant regularly transacts business in Maryland.

## FACTUAL ALLEGATIONS

12.      Until recently, electricity was supplied and distributed by local utility companies. Over the last several years, however, states have begun to modify the regulations in the energy industry in the hope that such modifications would enhance competition between energy providers.

13.      Major Energy is a private business that purchases electricity on the open market. Major Energy then resells the electricity supply to consumers in New York, Pennsylvania,

Maryland, New Jersey, Illinois, Massachusetts, Connecticut, Ohio and Washington DC using identical unlawful marketing tactics in each state and District.

14.     Major Energy uniformly charges its customers based on how much electricity (measured in kilowatt hours) the customer uses each month.

15.     In theory, energy deregulation allows consumers to shop around for the best energy rates. However, as Major Energy has demonstrated, the deregulation has also provided energy companies with the opportunity to unlawfully change consumers without consent and to gouge unsuspecting consumers. Specifically, Major Energy incentivized its sales representatives to present door-to-door contracts to switch consumers without any proper oversight to determine the authenticity of the agreements and has exploited deregulated markets by using the false promise of savings in uniform marketing campaigns imposed upon potential customers.

16.     Major Energy has already been sued by the Illinois Attorney General in 2018 for defrauding Illinois consumers by charging $2.4 million more than they would have been charged for electric services had they not switched to from their prior electric provider. That lawsuit settled in August 2019, with Major Energy paying back a large percentage of those marked up electric bill overcharges back to Illinois consumers.[1]

17.     Major Energy has been on notice of its unlawful and deceptive actions since the Illinois Attorney General's 2018 lawsuit, yet Major Energy knowingly continues to repeatedly and systematically defraud consumers nationwide despite being alerted of its unlawful practices.

18.     Upon information and belief, Major Energy jointly trains both internal employees and external third-party vendors (collectively referred to as "sales representatives") through substantively uniform selling scripts and other marketing materials to lure consumers to switch

---

[1] http://www.illinoisattorneygeneral.gov/pressroom/2019_08/20190819.html

from their current electric company to Major Energy, with the false promise that they will receive lower competitive rates resulting in savings in their monthly bills.  Furthermore, Major Energy does not have a workable policy or practice to ensure that an agreement to switch providers is authentic.  Major Energy's deceptive and inherently dishonest scheme, carried out by its sales representatives, results in unlawful slamming to its services and unlawful cramming by falsely promising consumers energy rates and savings which Major Energy knowingly fails to deliver.

19.     Upon information and belief, Major Energy's sales representatives engage in identical marketing practices nationwide in deregulated states, such as, selling electricity in the form of door-to-door solicitations, in-person solicitations at retail establishments, and telephone solicitations, which said telephone solicitations was just part of an unlawful Telephone Consumer Protection Act violation class action settlement in January 2020, *Albrecht v. Oasis Power LLC d/b/a Oasis Energy*, Case No. 1:18-cv-1061, in the U.S. District Court for the Northern District of Illinois.

20.     Major Energy's sales representatives systematically and routinely make omissions or misrepresentations with the intent that consumer rely on those omissions or misrepresentations in attempting to have consumers switch to Major Energy from their current electric provider.

21.     Major Energy's unlawful and deceptive marketing practices are not limited to its sales representatives. Major Energy's website, majorenergy.com, contains numerous false and deceptive advertisements that intend to deceive a potential consumer into believe that their electric bill will be lower with Major Energy:



22.     Major Energy claims its customers will save on their electricity bills, but

consumers almost always end up paying more than their previous rate.

23.     Thus, in reality, after consumers are switched to Major Energy, consumers'

energy bills increase dramatically.

**Plaintiff's Experience with Major Energy**

24.     In February 2017 Patricia Brito was residing at an apartment complex at 3018

Fallstaff Manor Court, Apt. B1, Baltimore, Maryland 21209.

25.     In or around February 2017, a Major Energy sales representative was conducting

door-to-door marketing on the premises of her apartment complex, including Plaintiff's unit, in

an attempt to get residents of the apartment complex to switch to Major Energy as their energy

provider.

26.     When Plaintiff Brito answered her door from Major Energy's door-to-door

solicitation, Major Energy's sales representative asked Plaintiff if he could see her Baltimore Gas

and Electric bill, which is a routine practice asked to all potential Major Energy customers.  Plaintiff agreed to let him look at it.

27.     Major Energy's sales representative represented to Plaintiff that her electric bill would be lower each month if she switched to Major Energy, which is part of Major Energy's systematic fraudulent marketing scheme.

28.     After the Major Energy sale's representative left Plaintiff's residence, Major Energy switched Plaintiff's electric from Baltimore Gas & Electric to Major Energy. However, Plaintiff never signed any door-to-door sales agreement and never actually gave consent to switching her electricity provider.

29.     For a period of many months, Plaintiff did not notice any change in her electric bill because it appeared substantially the same as before the switch and she did not notice the small, inconspicuous notation that Major Energy was now her designated provider and because her monthly charges were not immediately excessive.

30.     At some point after the switch to Major Energy, Plaintiff's electric costs were significantly higher than what they were for Baltimore Gas & Electric for the same historical electrical usage that Plaintiff usually utilized.

31.     Major Energy's fraudulent scheme is not limited to Plaintiff, but includes individuals from everywhere that Major Energy offers its services.

32.     Reasonable consumers, such as Plaintiff, would not be immediately aware that they had been "slammed" or, even if they did consent to be switched, would have reasonably expected that switching to Major Energy would be financially beneficial to them and they would enjoy unparalleled electric energy costs.

33.     Each of the representations made orally by, or on behalf of, Major Energy or its sales representatives were consistent with one another and were derived from Major Energy's standard form selling scripts, marketing, and training materials that were distributed to Major Energy's sales representatives.

34.     Major Energy's misrepresentations and omissions caused injury to Plaintiff and the members of the Class because they were either unlawfully slammed and/or unjustifiably induced to believe that they would receive energy costs savings on their monthly bills when, in actuality, Plaintiff and Class members were charged substantially more for their energy needs after Major Energy switched to its services. Had Plaintiff and Class members known they would be charged substantially more for their electric supplies by Major Energy, they would not have paid Major Energy for electric services.

35.     Plaintiff and members of the Class have sustained economic injury and damages as a result of Major Energy's wrongful conduct.

36.     Upon information and belief, the People's Counsel of Maryland, an organization created to protect the rights of people in regards to energy suppliers, has received 60 complaints in related to Major Energy's deceptive sales and business practices that mirror the allegations of this Complaint.

## <u>CLASS ACTION ALLEGATIONS</u>

37.     Plaintiff brings this suit as a class action on behalf of themselves and all others similarly situated (the "Class") pursuant to Fed. R. Civ. P. 23. Plaintiff seeks to represent the following Class and Sub-Classes:

**National Class**:     All persons who are or have been Major Energy customers in New York, Pennsylvania, Maryland, New Jersey, Illinois, Massachusetts, Connecticut, Ohio

and Washington DC and any other locations where Major Energy markets its services who used Major Energy as their electricity supplier.

**Maryland Subclass**:  All persons who are or have been Major Energy customers in Maryland who used Major Energy as their electricity supplier.

38.     Excluded from the Class are (a) any Judge or Magistrate presiding over this action and members of their families; (b) Major Energy, and their subsidiaries and affiliates; and (c) all persons who properly execute and file a timely request for exclusion from the Class (the "Class").

39.     Plaintiff reserves the right to re-define the Classes (hereinafter referred to as the "Class" unless otherwise specified) at the conclusion of discovery as to class certification.

40.     The exact number of Class members is unknown as such information is in the exclusive control of Major Energy. However, given the number of complaints regarding similar conduct is apparent that the class involves thousands of individuals who are geographically dispersed throughout the nation. Therefore, the Classes are so numerous that joinder of all members in one action is impracticable.

41.     Questions of law and fact that are common to the entire Class predominate over individual questions because the actions of Major Energy complained of herein were generally applicable to the entire Class. These legal and factual questions include, but are not limited to:

a.      The nature, scope and operations of Major Energy's wrongful practices;

b.      The uniformity of the scripts created through Major Energy's marketing and training material;

c.      Whether Major Energy engaged in fraudulent practices as to Class members;

d.      Whether Major Energy's conduct amounts to violations of the Maryland

Consumer Protection Act;

e.      Whether Major Energy's conduct amounts to violations of the Maryland Door-to-

Door Sales Act;

f.      Whether Major Energy negligently misrepresented the true nature of their energy

rates;

g.      Whether Plaintiff and the Class suffered damages as a result of Major Energy's

misconduct and, if so, the proper measure of damages.

42.     Plaintiff's claims are typical of the members of the Class because Plaintiff and

Class members were injured by the same wrongful practices. Plaintiff's claims arise from the

same practices and course of conduct that gives rise to the claims of the Class members, and are

based on the same legal theories. Plaintiff has no interests that are contrary to or in conflict with

those of the Class they seek to represent.

43.     Questions of law or fact common to Class members predominate. A class action is

superior to other available methods for the fair and efficient adjudication of this lawsuit, because

individual litigation of the claims of all Class members is economically unfeasible and

procedurally impracticable. While the Class members' aggregate damages are likely to be in the

millions of dollars, the individual damages incurred by each Class member are, as a general

matter, too small to warrant the expense of individual suits. The likelihood of individual Class

members prosecuting separate individual claims is remote, and even if every Class member

could afford individual litigation, the court system would be unduly burdened by the individual

litigation of such cases. Individualized litigation would also present the potential for varying

inconsistent, or contradictory judgments and would magnify the delay and expense to all parties

and to the court system resulting from multiple trials on the same factual issues. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action. Certification of the Class under Rule 23(b)(3) is proper.

44.     Relief concerning Plaintiff's rights under the laws herein alleged and with respect to the Class would be proper. Major Energy has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with regard to Class members as a whole and certification of the Class under Rule 23(b)(2) proper.

**COUNT I**
**VIOLATION OF THE MARYLAND CONSUMER PROTECTION ACT**
**(On Behalf of the National and Maryland Classes)**

45.     Plaintiff, on behalf of herself and all others similarly situated, repeats and re-alleges paragraphs 1 through 44 as if fully set forth herein.

46.     Plaintiff asserts this claim on behalf of herself and the other members of the National Class and Maryland Sub-Class.

47.     This claim is brought pursuant to Maryland's Consumer Protection Act, Md. Code, Com. Law § 13-101 et seq. ("MCPA").

48.     Under the MCPA, Major Energy's misleading representations regarding electric cost savings and competitive market rates are unfair, deceptive, and unconscionable.

49.     In the course of soliciting and promoting Major Energy's cost savings and competitive market rates to Plaintiff and Class Members and switching Plaintiff and Class Members over to Major Energy from their prior electric provider, Major Energy has engaged in unfair and deceptive acts and practices in trade or commerce in violation of Md. Code, Com. Law § 13-101.

50.     Major Energy, either directly or through its sales representatives, violated the MCPA through misrepresentations and failure to disclose material facts, when it switched consumers without their lawful agreement to its services.

51.     Major Energy violated the MCPA by engaging in fraudulent and deceptive sales marketing and practices by inducing Plaintiff and Class Members directly or through Major Energy's sales representatives to switch from their current electric provider to Major Energy with purportedly low rate offers and claimed energy cost savings, and then charging Plaintiff and Class Members exorbitant non-competitive energy rates.

52.     Major Energy violated the MCPA by falsely representing that Plaintiff and Class members would save money on their energy bills by switching to Major Energy.

53.     Major Energy violated the MCPA by failing to disclose that, on a consistent basis, Major Energy's regular rates are substantially higher than its competitors and not competitive in the market.

54.     Major Energy violated the MCPA by failing to adequately inform Plaintiff and Class Members that Major Energy's energy rates generally increase and will rarely, if ever, be lower than competitive market rates.

55.     Major Energy's acts and practices were false, misleading, deceptive, and unfair to consumers, in violation of the MCPA.

56.     Plaintiff and Class Members relied on Major Energy's omissions of material facts and upon misrepresentations delivered through Major Energy's marketing materials. Had Major Energy disclosed to Plaintiff and Class Members in their marketing and sales representative's presentation and materials or otherwise that their energy costs would increase with Major Energy, Plaintiff and Class Members would not have paid for Major Energy electric services.

57.     As a direct and proximate result of Major Energy's deceptive, fraudulent, and unfair practices, Plaintiff and Class Members have suffered injury in fact and/or actual damages in an amount to be determined at trial.

58.     Major Energy is subject to liability under the MCPA and for costs, and attorney's fees under the MCPA.

## COUNT II
## Unjust Enrichment
(On Behalf of the National Class and Maryland Subclass)

59.     Plaintiff, on behalf of herself and all others similarly situated, repeats and re-alleges paragraphs 1 through 44 as if fully set forth herein.

60.     Plaintiff conferred a benefit upon Defendant by the payment of money.

61.     Defendant received the money paid by Plaintiff.

62.     Defendant's acceptance and retention of the money from Plaintiff is inequitable because it violates the regulations and rules of the state's regulatory body which specifically prohibits fraud, deceptive sales practices, and slamming.

63.     Defendant must disgorge the ill-gotten gains conferred upon it as a result of its unlawful and inequitable conduct.

## COUNT III
## Common Law Fraud, Including Fraudulent Inducement, and Fraudulent Concealment
(On Behalf of the National Class and Maryland Subclass)

64.     Plaintiff, on behalf of herself and all others similarly situated, repeats and re-alleges paragraphs 1 through 44 as if fully set forth herein.

65.     Major Energy, either directly or through its sales representatives, made false representations of fact where its sales representatives switched consumers without their lawful agreement to its services.

66.     Major Energy failed to disclose material facts and made false and fraudulent representations of material facts to Plaintiff and Class Members regarding purported cost savings benefits of switching energy providers form their previous provider to Major Energy, and concealed material information regarding Major Energy's systematic scheme to unilaterally raise customers' rates to above-market levels once switched over to Major Energy from their previous provider.

67.     At the times Major Energy made or caused to be made these representations and concealed material facts integral to Major Energy's scheme, Plaintiff and Class Members were unaware of the falsity of these representations, and reasonably believed them to be true and had no knowledge of the material facts that Major Energy did not disclose.

68.     In making these representations or causing them to be made or failing to disclose material facts, Major Energy knew they were false and intended that Plaintiff and Class Members would rely upon such misrepresentations and failures to disclose material facts.

69.     Plaintiff and Class members did, in fact, rely upon such misrepresentations and/or Major Energy's failure to disclose all material facts and, as a consequence, became customers of Major Energy.

70.     As a direct and proximate result of Major Energy's deceptive, fraudulent, and unfair practices, Plaintiff and Class Members have suffered injury in fact and/or actual damages in an amount to be determined at trial.

71.     Major Energy is liable for damages and declaratory relief.

**COUNT IV**
**NEGLIGENT MISREPRESENTATION**
**(On Behalf of the National Class and Maryland Subclass)**

72.     Plaintiff, on behalf of herself and all others similarly situated, repeats and re-alleges paragraphs 1 through 44 as if fully set forth herein.

73.     Under the circumstances alleged, Major Energy owed a duty to Plaintiff and Class Members to provide them with accurate information regarding, inter alia, the true nature of Major Energy's rates and lack of electric cost savings.

74.     Major Energy owed a duty to Plaintiff and Class members to not switch them to Major Energy's services without their knowledge or consent. Major Energy, either directly or through its sales representatives, made negligent representations of fact when its sales representatives switched consumers without their lawful agreement to switch to its services.

75.      Major Energy, directly and/or through Major Energy's sales representatives, falsely represented to Plaintiff and Class members that by switching energy suppliers to Major Energy, they would enjoy savings with competitive market rates.

76.     Major Energy's representations were false, negligent, and material

77.     Major Energy negligently made these false misrepresentations with the understanding that Plaintiff and Class Members would rely upon them.

78.     Plaintiff and Class members did, in fact, reasonably rely upon Major Energy's misrepresentations and concealment of material facts.

79.     As a direct and proximate result of Major Energy's negligent actions, Plaintiff and Class members have suffered injury in fact and/or actual damages in an amount to be determined at trial.

80.     Major Energy is liable for damages and declaratory relief is appropriate.

16

**JURY TRIAL DEMANDED**

81.     Plaintiff and Class Members hereby demand a trial by jury on all issues so triable.

**PRAYER FOR RELIEF**

82.     WHEREFORE, Plaintiff prays that this case be certified and maintained as a class action and for judgment to be entered against Major Energy as follows:

a.   Enter an order certifying the proposed Classes, designating Plaintiff as the class representative, and designating the undersigned as Class counsel;

b.   Declare that Major Energy is financially responsible for notifying all Class members;

c.   Declare that Major Energy must disgorge, for the benefit of the Class, the ill-gotten profits it received from switching consumers without their consent and for unlawfully marking up its electric rates;

d.   A judgment that Major Energy violated the MCPA;

e.   A judgment that Major Energy committed common law fraud upon Plaintiff and Class Members;

f.   A judgment that Major Energy negligently represented itself to Plaintiff and Class Members;

g.   For economic and compensatory damages on behalf of Plaintiffs and all members of the Class;

h.   For actual damages sustained, as allowed by law;

i.   For injunctive and declaratory relief;

j.   For reasonable attorneys' fees and reimbursement of all costs for the prosecution of this action pursuant the MCPA; and

k.   For such other and further relief as this Court deems just and appropriate.

Respectfully submitted,

   */s/  Jane Santoni*            
Jane Santoni, CPF No. 8612010447
Matthew Vocci, CPF No. 0612130424
Chelsea Ortega, CPF No. 1212120342
Santoni, Vocci & Ortega, LLC
401 Washington Avenue, Suite 200
Towson, Maryland 21204
Phone: 443-921-8161
Fax: 410-525-5704
jsantoni@svolaw.com

**VARNELL & WARWICK, P.A.**
JANET R. VARNELL (Admitted *Pro Hac Vice*)
MATTHEW T. PETERSON (Admitted *Pro Hac Vice*)
1101 E. Cumberland Ave.
Ste. 201H, #105
Tampa, FL 33602
Telephone:  (352) 753-8600
Facsimile:  (352) 504-3301
*jvarnell@varnellandwarwick.com*
*mpeterson@varnellandwarwick.com*
*kstroly@varnellandwarwick.com*

***Attorneys for the Named Plaintiff***
***and the Putative Class***

18

## NOTICE OF CLAIM FOR ATTORNEYS' FEES

Pursuant to Maryland Rule 2-703, Plaintiff hereby gives notice that he seeks attorneys' fees in this case.  Plaintiff further states that as the case progresses, these fees could be substantial.

Respectfully submitted,

__/s/ Jane Santoni_____
Jane Santoni, CPF No. 8612010447
Matthew Vocci, CPF No. 0612130424
Chelsea Ortega, CPF No. 1212120342
Santoni, Vocci & Ortega, LLC
401 Washington Avenue, Suite 200
Towson, Maryland 21204
Phone: 443-921-8161
Fax: 410-525-5704
cortega@svolaw.com
*Attorneys for the Named Plaintiffs*
*and the Putative Class*

## DEMAND FOR JURY TRIAL

Plaintiffs, individually and on behalf of the Class Members, demands trial by jury on all issues of fact.

/s/_____
Jane Santoni